UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILLERMO SOLIS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF VALLEJO; VALLEJO POLICE CHIEF JOSEPH KREINS, individually and in his official capacity; VALLEJO POLICE OFFICER JOSH CAITHAM, individually; COUNTY OF SOLANO; SOLANO COUNTY SHERIFF THOMAS A. FERRARA, individually and in his official capacity; and DOES 1 through 20,<br><br>Defendants. | No. 2:14-cv-00483-KJM-KJN<br><br>ORDER |

This matter is before the court on the motion by the County of Solano ("County") and Solano County Sherriff Thomas A. Ferrara ("Sheriff Ferrara") (collectively, for purposes of this motion, "defendants") to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot. Dismiss, ECF 6.) Plaintiff Guillermo Solis ("Mr. Solis" or "plaintiff") opposes the motion. (Pl.'s Opp'n, ECF 7.) The court held a hearing on the matter on April 25, 2014, at which Nicholas Casper appeared for plaintiff and Martha Thomas appeared for defendants. As explained below, the court DENIES in part and GRANTS in part defendants' motion.

I.      ALLEGED FACTS AND PROCEDURAL BACKGROUND

The claims in this case arise out of an alleged "joint operation involving a probation check" of one Alejandro Guizar ("Mr. Guizar") conducted by the Vallejo Police Department ("VPD") and the Solano County Sheriff's Department.  (Compl. ¶¶ 17–18, ECF 1.) Mr. Solis is a 55-year-old man living in the City of Vallejo, California.  (*Id.* ¶ 5. )  Mr. Solis resided in a "large [subdivided] home," where Mr. Guizar rented "a unit in the rear of the property."  (*Id.* ¶ 17.)  "Mr. Guizar's unit was accessible only by walking to the rear of the property, up a flight of stairs, and through a separate front door . . . .  [It] was not accessible through the front entrance of the home, where [Mr. Solis] resided with his family."  (*Id.*)

On March 12, 2013, at approximately 3:15 p.m., in conducting a probation check on Mr. Guizar, VPD officers and Solano County Sheriff deputies entered Mr. Solis's home by breaking "down [Mr. Solis's] front door with a battering ram."  (*Id.* ¶ 20.)  They "entered [p]laintiff's home with guns drawn, pointing weapons at [p]laintiff's family members and handcuffing several of the male residents."  (*Id.* ¶ 21.)  At the time when the officers and deputies entered plaintiff's home, plaintiff "was sleeping in his bedroom, adjacent to the front door."  (*Id.* ¶ 22.)  The officers and deputies "barged through [p]laintiff's bedroom door while pointing guns at [p]laintiff, grabbed [p]laintiff from his bed, and carried him in his underwear into the living room."  (*Id.* ¶ 23.)  The officers and deputies "slammed [p]laintiff to the living room floor, causing [p]laintiff to strike his head on the hardwood floor."  (*Id.* ¶ 24.)  Then, they handcuffed plaintiff and placed him "in a chair in the living room, along with other members of the household[, where he] remained in his underwear throughout the incident."  (*Id.*)

Subsequently, the officers and deputies "confirmed that the probationer, Mr. Guizar, neither lived in the main home, nor was present in his unit in the rear of the property."  (*Id.* ¶ 25.)  Plaintiff avers because "there had been prior probation checks of Mr. Guizar while he resided [in the rear unit,] . . . the VPD officers and the Sherriff Deputies . . . knew or should have known that Mr. Guizar resided in a rear unit of the property with a separate entrance to the main home."  (*Id.* ¶ 19.)

/////

1   "As a result of the head injury that [plaintiff] sustained, . . . he began going into
2   visible medical distress." (*Id.* ¶ 26.) However, the officers and deputies "were dismissive of
3   plaintiff's clear medical distress, mocking him and accusing him of faking symptoms." (*Id.* ¶ 27.)
4   "Eventually, an ambulance was called . . . [and plaintiff] was transported to Kaiser Vallejo, and
5   then to Kaiser North Valley Sacramento, where he was diagnosed with head trauma." (*Id.* ¶ 28.)
6   Plaintiff remained there "for over a week, where he was treated for a significant brain injury."
7   (*Id.* ¶ 29.)

8   On February 14, 2014, Plaintiff filed a complaint against the City of Vallejo,
9   Vallejo Police Chief Joseph Kreins, Vallejo Police Officer Josh Caitham, the County, and Solano
10  County Sheriff Ferrara. (ECF 1.[1]) The complaint alleges ten claims: (1) violation of the Fourth
11  Amendment under 42 U.S.C. § 1983 against individual defendants, including Officer Caitham;
12  (2) supervisory liability under § 1983 against Chief Kreins and Sheriff Ferrara; (3) municipal
13  liability under § 1983 against the City of Vallejo, Chief Kreins, Sheriff Ferrara, and the County;
14  (4) assault against all defendants; (5) battery against all defendants; (6) false arrest and illegal
15  imprisonment against all defendants; (7) intentional infliction of emotional distress against all
16  defendants; (8) negligence against all defendants; (9) trespass against all defendants; and
17  (10) violation of sections 52 and 52.1 of the California Civil Code. (*Id.*)

18  Defendants, the County and Sheriff Ferrara, now move to dismiss plaintiff's
19  complaint. (ECF 6.) Plaintiff opposes the motion. (ECF 7.) Defendants have replied. (ECF 8.)
20  /////

21
     _____
22       [1] The complaint also identifies Doe defendants. The Ninth Circuit provides that
     "'[plaintiffs] should be given an opportunity through discovery to identify [] unknown
23   defendants'" "in circumstances . . . 'where the identity of the alleged defendant[] [is] not []
     known prior to the filing of a complaint.'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir.
24   1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)) (modifications in the
     original). Plaintiff is warned, however, that such defendants will be dismissed where "'it is clear
25   that discovery would not uncover the identities, or that the complaint would be dismissed on other
     grounds.'" *Id.* (quoting *Gillespie*, 629 F.2d at 642). Plaintiff is further warned that Federal Rule
26   of Civil Procedure 4(m), which states that the court must dismiss defendants who have not been
     served within 120 days after the filing of the complaint unless plaintiff shows good cause, is
27   applicable to doe defendants. *See Glass v. Fields*, No. 1:09-cv-00098-OWW-SMS PC, 2011 U.S.
     Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011); *Hard Drive Prods. v. Does*, No. C 11-01567 LB,
28   2011 U.S. Dist. LEXIS 109837, at *2-4 (N.D. Cal. Sep. 27, 2011).

## II. <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). This rule does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, "allegations that contradict matters properly subject to judicial notice," or material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

/////
/////
/////
/////

4

III. BRIEF SUMMARY OF § 1983 PRINCIPLES

Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Congress enacted § 1983 under its power provided in section 5 of the Fourteenth Amendment to pass "appropriate legislation" enforcing the Fourteenth Amendment. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Section 1983 does not serve as an independent source of substantive rights, rather it provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). The Ninth Circuit has described the requirements of a § 1983 claim as: "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton*, 947 F.2d at 1420. "[Section] 1983 . . . contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right." *Daniels v. Williams*, 474 U.S. 327, 329–30 (1986).

IV. DISCUSSION

Defendants seek to dismiss plaintiff's entire complaint because it "has [not] been sufficiently pled." (ECF 6 at 2.) Plaintiff argues the complaint alleges sufficient facts to survive a motion to dismiss. (ECF 7 at 2–3.) The court addresses plaintiff's claims in turn.

A. First Claim: Violation of the Fourth Amendment

In essence, defendants argue because Sheriff Ferrara did not personally participate in the acts giving rise to this complaint, he cannot be directly liable. (ECF 6 at 2–3.)

At the hearing, plaintiff's counsel clarified that plaintiff's first claim is alleged against the individual officers only and not against Sheriff Ferrara.

Accordingly, the court GRANTS with prejudice defendants' motion as to plaintiff's first claim as alleged against Sheriff Ferrara.

5

B.  Second Claim: Supervisory Liability

Defendants argue plaintiff's allegations are not sufficient to state a claim for supervisory liability because (1) Sheriff Ferrara is "rather obliquely accused of failure to train, but there are no specifics pled as to his personal participation in this supposed failure"; (2) "plaintiff has not alleged that the sheriff . . . knew of the violations before they occurred and failed to prevent them" (ECF 6 at 3); and (3) there are no factual allegations showing "a causal link between [Sheriff Ferrara] and the claimed constitutional violation" (*id.* at 4).

Plaintiff responds that his allegations show Sheriff Ferrara "exhibit[ed] a deliberate indifference to [p]laintiff's constitutional rights by failing to train his deputies which directly and proximately caused [p]laintiff's harm." (ECF 7 at 5.)

"[S]upervisory officials are not liable for the actions of subordinates on any theory of vicarious liability under 42 U.S.C. § 1983." *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001). But supervisors can be held liable in individual capacity for: "1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000); *see Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir. 1991).

"Personal-capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Liability in such cases can be established by showing that the official caused the alleged constitutional injury. *See id.* at 166. Specifically, the Ninth Circuit has found "supervisorial liability under § 1983 where the supervisor 'was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'" *Edgerly v. City & Cnty. of S.F.*, 599 F.3d 946, 961 (9th Cir. 2010) (quoting *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003)).

Here, the court finds plaintiff's complaint contains sufficient underlying facts "to give fair notice and to enable [Sheriff Ferrara] to defend [himself] effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

1        Specifically, plaintiff alleges the Sheriff's deputies, despite their knowledge "that
2 Mr. Guizar resided in a rear unit of the property with a separate entrance to the main home,"
3 "broke down [p]laintiff's front door with a battering ram," "pointed guns at [p]laintiff's family
4 members," "barged through [p]laintiff's bedroom door . . . and carried him . . . into the living
5 room," "slammed [p]laintiff to the living room floor, causing [him] to strike his head on the
6 hardwood floor," and mocked plaintiff, "accusing him of faking his symptoms [of medical
7 distress.]"  (ECF 1 ¶¶ 19–24; 26–27.)  The Sheriff's failure to train, plaintiff alleges, "proximately
8 caused the alleged unconstitutional actions of the Sheriff's Deputies."  (*Id.* ¶ 43.)  The allegations
9 "plausibly suggest an entitlement to relief" under failure to train theory of a supervisory liability
10 claim.  *Starr*, 652 F.3d at 1216.
11        Accordingly, the court DENIES defendants' Motion to Dismiss plaintiff's second
12 claim against Sheriff Ferrara.
13        C.        Third Claim: Municipal Liability against the County and Sheriff Ferrara
14        As an initial matter, the court dismisses plaintiff's claim against Sheriff Ferrara as
15 a municipal officer with prejudice because plaintiff sues Sheriff Ferrara in his official capacity
16 along with the County.  *See Howard v. Contra Costa Cnty.*, No. 13-03626, 2014 WL 824218, at
17 *12 (N.D. Cal. Feb. 28, 2014) ("[I]f individuals are being sued in their official capacity as
18 municipal officials *and* the municipal entity itself is also being sued, then the claims against the
19 individuals are duplicative and should be dismissed."  (emphasis in original; internal quotation
20 marks omitted)).
21        Accordingly, the court GRANTS defendants' Motion to Dismiss plaintiff's
22 municipal liability claim against Sheriff Ferrara in his official capacity, without leave to amend.
23        As to plaintiff's municipal liability claim against the County, defendants argue
24 plaintiff's allegations are insufficient to show the County "had a policy, practice and custom of
25 violating the Fourth Amendment . . . ."  (ECF 6 at 4.)
26        Plaintiff responds that his "allegations clearly state the specific policies of
27 [d]efendants . . . which were the legal cause of [p]laintiff's injuries."  (ECF 7 at 6.)
28 /////

In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978), the Supreme Court held that a municipal entity may be held liable under § 1983 where its municipal policy or custom causes an injury. However, as in supervisory liability claims, and as the Court has clarified recently, a local governmental unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. *See Connick v. Thompson*, __ U.S. __, 131 S. Ct. 1350, 1359 (2011). Hence, a plaintiff must demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental entity itself. *See id.*

Specifically, to establish municipal liability under *Monell*, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 131 S. Ct. at 1359. A policy of inaction may also meet the municipal policy requirement. *See Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010). In the absence of an explicit policy, a plaintiff may also show municipal liability by demonstrating a permanent practice by the municipality that gave rise to the alleged constitutional violation. *See Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1232–33 (9th Cir. 2011). However, allegations of single instances of unlawful acts are insufficient to show a municipal custom. *See Navarro v. Block*, 72 F.3d 712, 714–15 (9th Cir. 1996).

A plaintiff may also establish municipal liability by establishing that the constitutional violation was caused by a failure to train employees sufficiently. *See Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008). That showing depends on the following three elements: (1) "the existing training program" must be inadequate "in relation to the tasks the particular officers must perform"; (2) the officials must have been deliberately indifferent "to the rights of

persons with whom the police come into contact"; and (3) the inadequacy of the training "must be shown to have 'actually caused' the deprivation of the alleged constitutional right." *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) (internal citations and quotation marks omitted).

"Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." *Dougherty*, 654 F.3d at 900. "Similarly, a failure to supervise that is 'sufficiently inadequate' may amount to 'deliberate indifference.'" *Id.* However, "[m]ere negligence in training or supervision, . . . does not give rise to a *Monell* claim." *Id.*

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 131 S. Ct. at 1360 (internal quotation marks and citation omitted). "A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train" *Id.* "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* Whether the plaintiff has succeeded in demonstrating such deliberate indifference is generally a question for the jury. *See Lee v. City of Los Angeles*, 250 F.3d 668, 682 (9th Cir. 2001) (citation omitted)

Here, the court finds plaintiff's allegations are sufficient to state a claim for municipal liability and survive a motion to dismiss. Plaintiff alleges that "it was the policy, practice and custom of . . . [the County] . . . to violate the Fourth Amendment." (ECF 1 ¶ 46.) "Those violations which constituted the policy . . . included, but were not limited to, entering private residences without a warrant and without exigent circumstances; pointing firearms at residents, in their own home, and who were cooperating with officer commands; detaining residents without the requisite cause; and using unreasonable, unjustified, and/or excessive force." (*Id.*) Plaintiff further alleges those policies "were the moving forces behind the violation of [p]laintiff's rights protected by the Fourth Amendment." (*Id.* ¶ 47.) These allegations give fair notice to enable the County to defend itself effectively.

1   Accordingly, the court DENIES defendants' Motion to Dismiss plaintiff's
2   municipal liability claim.

3       D.    State Law Claims

4   As to plaintiff's state law claims, defendants argue "[t]he only specific individual
5   defendant, other than the generalized 'DOES,' is the sheriff and he is not alleged to have had any
6   personal involvement in the state claims." (ECF 6 at 5.)  Accordingly, defendants conclude that
7   because "[a]s a public official, the sheriff cannot be liable for injury caused by the act or omission
8   of another," plaintiff's state law claims should be dismissed. (*Id.*)

9   Plaintiff responds "Sheriff . . . Ferrara is liable pursuant to California Government
10  Code [section] 820(a), which renders a public employee liable for injury caused by his or her act
11  or omission to the same extent as a private person." (ECF 7 at 7.)  At the hearing, plaintiff's
12  counsel agreed to amend the Complaint, to the extent possible, to allege Sheriff Ferrara's personal
13  participation such that liability will attach under the state law claims.

14  Under California Government Code section 820.8, "a public employee is not liable
15  for an injury caused by the act or omission of another person."

16  Here, plaintiff alleges the following state law claims against all defendants,
17  including Sheriff Ferrara: (1) assault; (2) battery; (3) false arrest and illegal imprisonment;
18  (4) intentional infliction of emotional distress; (5) negligence; (6) trespass; and (7) California
19  Civil Code sections 52 and 52.1.  (ECF 1.)

20  The state law claims alleged by plaintiff require Sheriff Ferrara's individual
21  participation for liability to attach.  Because the complaint is devoid of any factual allegations
22  showing Sheriff Ferrara's individual acts that could give rise to plaintiff's state law claims, and
23  because Sheriff Ferrara, as a public official, cannot be held vicariously liable for the acts of
24  others, the court GRANTS defendants' Motion to Dismiss plaintiff's state law claims as alleged
25  against Sheriff Ferrara, with leave to amend if plaintiff can do so consonant with Rule 11.
26  /////
27  /////
28  /////

V.     CONCLUSION

For the foregoing reasons, the court orders as follows:

1. Defendants' Motion to Dismiss plaintiff's first claim, violation of the Fourth Amendment, as alleged against Sheriff Ferrara is GRANTED with prejudice.
2. Defendants' Motion to Dismiss plaintiff's second claim, supervisory liability, is DENIED.
3. Defendants' Motion to Dismiss plaintiff's third claim, municipal liability, as alleged against Sheriff Ferrara in his official capacity is GRANTED with prejudice.
4. Defendants' Motion to Dismiss plaintiff's third claim, municipal liability, as alleged against the County is DENIED.
5. Defendants' Motion to Dismiss plaintiff's state law claims as alleged against Sheriff Ferrara is GRANTED, with leave to amend.
6. Plaintiff shall have 21 days from the date of this order to amend the Complaint.

IT IS SO ORDERED.

DATED: June 17, 2014.

_____
UNITED STATES DISTRICT JUDGE